**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LILI CHAI,<br><br>　　　　　Petitioner,<br><br>　　　v.<br><br>WARDEN, ADELANTO ICE PROCESSING CENTER,<br><br>　　　　　Respondent. | Case No. ED CV 26-1187 FMO (KS)<br><br>**ORDER RE: APPLICATION FOR PRELIMINARY INJUNCTION** |

Lili Chai ("petitioner"), represented by counsel, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Petition") against the Warden of the Adelanto Processing Center ("respondent").  (See Dkt. 1, Petition at ¶ 2).  Petitioner also filed an Ex Parte Application for a Temporary Restraining Order ("Application"), seeking her immediate release.  (See Dkt. 5, Application at 9).  Because the standards for granting a TRO and a preliminary injunction are the same, see Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., 240 F.3d 832, 839 n. 7 (9th Cir. 2001), the court converted petitioner's Application to an application for a preliminary injunction ("PI Application").  (Dkt. 6, Court's Order of March 16, 2026, at 1).  Having reviewed and considered all the briefing filed with respect to petitioner's PI Application, the court finds that oral argument is not necessary to resolve the PI Application, see Fed. R. Civ. P. 78; L. R. 7-15; Willis v. Pac. Mar. Ass'n, 244 F.3d 675, 684 n. 2 (9th Cir. 2001), and concludes as follows.

## **BACKGROUND**

Petitioner, who is from China, entered the United States more than 15 years ago.  (See Dkt. 1, Petition at ¶¶ 7-8, 10).  Petitioner then married a United States citizen.  (Id. at ¶ 9).  On August 4, 2011, following her marriage, the United States Citizenship and Immigration Services ("USCIS") admitted her as a conditional lawful permanent resident ("LPR").  (See id. at ¶ 10).  In September, 2013, USCIS removed the conditions on her residency and issued her a green card.  (See id. at ¶ 11).  In December 2014, petitioner's daughter was born in the United States.  (Id. at ¶ 12).

In January 2015, petitioner was at a department store when her stepsister and niece allegedly shoplifted merchandise and fled the scene.  (See Dkt. 1, Petition at ¶¶ 15-16).  Although petitioner denied any involvement, she was charged with theft.  (See id. at ¶¶ 17-18).  Upon the advice of her attorney that the conviction would not impact her immigration status, she pled guilty and received a sentence of community service and probation.  (See id. at ¶¶ 20-22, 24).

Since 2011, when petitioner received her green card, she has traveled internationally 19 times.  (Dkt. 1, Petition at ¶¶ 29, 31).  After her 2015 conviction, petitioner continued living in the United States, and traveled internationally at least seven times without any immigration issues.  (See id. at ¶¶ 24, 31).  Petitioner always carried her conviction dismissal documents, and when asked about the conviction by immigration officials, she was always permitted to re-enter the United States.  (See id. at ¶¶ 33-34).  But on March 8, 2026, when petitioner attempted to return to the United States after a trip to China, (see id. at ¶¶ 37-39), she presented her green card and provided the dismissal documents for her conviction, as she had done previously, but this time petitioner was transferred to the custody of the U.S. Immigration and Customs Enforcement ("ICE").  (See id. at ¶¶ 40-49).  ICE then transported her to the Adelanto ICE Processing Center where she remains detained.  (See id. at ¶ 50).

On March 12, 2026, petitioner was issued a Notice to Appear, charging her with inadmissability under 8 U.S.C. § 1182(a)(2)(A)(i)(I), for having committed a crime involving moral turpitude.  (See id. at ¶ 52); (Dkt. 5, PI Application at 5).  Petitioner alleges her detention violates

her lawful permanent resident status under the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101(a)(13)(C),[1] and her procedural due process rights.  (See Dkt. 1, Petition at ¶¶ 55-84).

## LEGAL STANDARD

Federal Rule of Civil Procedure 65 provides courts with the authority to issue preliminary injunctions and temporary restraining orders ("TROs").  See Fed. R. Civ. P. 65(a) & (b).  The purpose of a preliminary injunction "is to preserve the status quo and the rights of the parties until a final judgment" on the merits can be rendered, see U.S. Philips Corp. v. KBC Bank N.V., 590 F.3d 1091, 1094 (9th Cir. 2010), while the purpose of a TRO is to "preserv[e] the status quo and prevent[] irreparable harm just so long as is necessary to hold a hearing" for the preliminary injunction.  Reno Air Racing Ass'n., Inc. v. McCord, 452 F.3d 1126, 1131 (9th Cir. 2006) (quoting Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cnty., 415 U.S. 423, 439, 94 S.Ct. 1113, 1124 (1974)).  The standards for a TRO and a preliminary injunction are the same.  See Stuhlbarg Int'l Sales Co., 240 F.3d at 839 n. 7; NML Capital, Ltd. v. Spaceport Sys. Int'l, L.P., 788 F.Supp.2d 1111, 1117 (C.D. Cal. 2011) (same).  "Like a preliminary injunction, a temporary restraining order is 'an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.'" Six v. Newsom, 462 F.Supp.3d 1060, 1067 (C.D. Cal. 2020) (quoting Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 22, 129 S. Ct. 365, 376 (2008)).

A petitioner seeking a preliminary injunction or TRO must establish that:  (1) she is likely to succeed on the merits; (2) she is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in her favor; and (4) an injunction is in the public interest. Winter, 555 U.S. at 20, 129 S.Ct. at 374.  Under the Ninth Circuit's "sliding scale" approach, "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another."  All. for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131 (9th Cir. 2011).  "For example, a stronger showing of irreparable harm to plaintiff might offset

[1] Unless otherwise indicated, all further section references are to Title 8 of the United States Code.

a lesser showing of likelihood of success on the merits." Id.  The last two Winter factors "merge when the Government is the opposing party." Nken v. Holder, 556 U.S. 418, 435, 129 S.Ct. 1749, 1762 (2009).

**DISCUSSION**

I.    SUBJECT MATTER JURISDICTION.

Respondent asserts that the court lacks subject matter jurisdiction to consider the PI Application under § 1252(g).  (See Opposition to PI Application ("Dkt. 10, Opp.") at 4-5).  Section 1252(g) provides in relevant part that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter."  8 U.S.C. § 1252(g).  Section 1252(g) "applies only to three discrete actions that the Attorney General may take:  [his] decision or action to commence proceedings, adjudicate cases, or execute removal orders."  Reno v. Am.-Arab Anti-Discrimination Comm., 525 U.S. 471, 482, 119 S.Ct. 936, 943 (1999) (emphasis in original) (internal quotation marks omitted).  The Supreme Court did not interpret § 1252(g) "to sweep in any claim that can technically be said to 'arise from' the three listed actions of the Attorney General.  Instead, [the Court] read the language to refer to just those three specific actions themselves."  Jennings v. Rodriguez ("Jennings"), 583 U.S. 281, 294, 138 S.Ct. 830, 841 (2018) (Alito, J.) (plurality opinion) (citing Reno, 525 U.S. at 482-83, 119 S.Ct. at 943).

Here, petitioner challenges the lawfulness of her detention based on her status as a lawful permanent resident, as well as the lack of procedural due process protections before her detention.  (See Dkt. 1, Petition at ¶¶ 55-84).  "[B]ecause Petitioner challenges the lawfulness of [her] detention during the pendency of [her] removal proceedings, it is not a challenge to one of the three discrete events along the road to deportation that § 1252(g) applies to."  Rodriguez Cabrera v. Mattos, 808 F.Supp.3d 1159, 1174 (D. Nev. 2025) (internal quotation marks omitted); see Phakeokoth v. Noem, 2025 WL 3124341, *3 (S.D. Cal. 2025) (internal quotation marks omitted) ("Here, Petitioner does not challenge the legitimacy of his September 2004 order of removal. Rather, Petitioner challenges the legality of his present detention which does not require

4

judicial review of ICE's discretionary authority to decide when or whether to execute a removal order.").  Therefore, § 1252(g) does not deprive the court of jurisdiction.

Respondent also relies on § 1252(b)(9) in support of its jurisdictional argument.  (See Dkt. 10, Opp. at 5-6).  Section 1252(b)(9) provides that "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien . . . shall be available only in judicial review of a final order under this section."  8 U.S.C. § 1252(b)(9).  Judicial review under this section shall be provided by the "appropriate court of appeals"  8 U.S.C. § 1252(a)(5).

Respondent argues that under Jennings, § 1252(b)(9) "divest[s] district courts of jurisdiction to review both direct and indirect challenges to removal orders, including decisions to detain for purposes of removal or for proceedings." (Dkt. 10 Opp. at 7).  However, as respondent concedes, (see id. at 7-8), Jennings found that when petitioner is "not challenging the decision to detain [her] in the first place . . . § 1252(b)(9) does not present a jurisdictional bar.'"  583 U.S. at 294-95, 138 S.Ct. at 841.  Petitioner is "not asking for review of an order of removal; [she is] not challenging the decision to detain [her] in the first place or to seek removal; and [she is] not even challenging any part of the process by which [her] removability will be determined."  Id. at 294, 138 S.Ct. at 841.  Thus, § 1252(b)(9) does not bar the court from reviewing petitioner's claim.  See, e.g., Oregel Amezcua v. Noem, 2026 WL 1048212, *3 (C.D. Cal. 2026) (finding that "Petitioner's challenge [as to] whether Respondents afforded him adequate due process when they deprived him of his liberty interest, whether his ongoing detention violate[d] due process, and . . . whether Respondents' conduct violate[d] the Immigration and Nationality Act" was not barred by § 1252(b)(9)); Mosqueda v. Noem, 2025 WL 2591530, *3 (C.D. Cal. 2025) (finding that § 1252(b)(9) was not a jurisdictional bar to foreign nationals challenging their detention without bond hearing); Garcia v. Noem, 803 F.Supp.3d 1064, 1073 (S.D. Cal. 2025) (finding that "decisions to deny bond hearings fall outside the purview of § 1252(b)(9)'s jurisdictional bar").

II.     LIKELIHOOD OF SUCCESS ON THE MERITS.

In a single paragraph, respondent asserts that §§ 1225(b) and 1226(a) authorize the detention of non-citizens. (See Dkt. 10, Opp. at 8-9).  However, it is irrelevant whether §§ 1225(b)

or 1226(a) authorize petitioner's detention because respondent's failure to provide petitioner with any pre-deprivation notice or opportunity to be heard is constitutionally deficient. "Courts have overwhelmingly recognized that LPRs possess a particularly weighty liberty interest in remaining free from immigration custody." Burton v. LaRose, 2026 WL 1256875, *2 (S.D. Cal. 2026). "[A]n LPR does not lose their protected interest merely because the Government has initiated removal proceedings or even ordered them removed." Id.; see, e.g., id. at 3-4 (finding petitioner's due process rights were violated when the government detained him without notice or a pre-detention hearing, and ordering his immediate release); Oregel Amezcua, 2026 WL 1048212, at *7-8 (granting immediate release because the government failed to provide petitioner, a lawful permanent resident, "with adequate procedural protections when they detained him").

The remainder of respondent's opposition does not address the likelihood of success on the merits of petitioner's due process claim.[2] (See, generally, Dkt. 10, Opp.). Accordingly, the court construes respondent's failure to address petitioner's due process claim as a concession. See, e.g., Soleimani v. Larose, 2025 WL 3268412, *3 (S.D. Cal. 2025) (granting habeas petition where government's response to the petition failed to respond to numerous claims raised in the petition, including a Fifth Amendment due process claim); Singh v. Chiang, 2025 WL 4058328, *4 (C.D. Cal. 2025) (construing government's failure to oppose argument raised by habeas petitioner as a concession).

III.    LIKELIHOOD OF IRREPARABLE HARM.

Petitioner contends that she will suffer irreparable harm in the absence of emergency relief as she will continue to be unlawfully detained. (See Dkt. 5, PI Application at 8). Respondent does not oppose this contention. (See, generally, Dkt. 10, Opp.). Under the circumstances, the court finds that petitioner's continued detention constitutes immediate and irreparable injury. See, e.g., Oregel Amezcua, 2026 WL 1048212, at *8 (finding that no further showing of irreparable injury is

---

[2] Respondent also fails to contest petitioner's INA claim. (See, generally, Dkt. 10, Opp.). However, because the court grants petitioner's requested relief on procedural due process grounds, it need not reach petitioner's statutory claim.

necessary when respondents deprived petitioner of his procedural due rights by detaining him without notice or a pre-detention hearing).

IV.    BALANCE OF THE EQUITIES AND PUBLIC INTEREST.

The final two merged factors likewise weigh heavily in favor of petitioner.  Although the government has a compelling interest in the enforcement of its immigration laws, that interest cannot justify the violation of petitioner's constitutional rights.  See Index Newspapers LLC v. U.S. Marshals Serv., 977 F.3d 817, 838 (9th Cir. 2020) ("It is always in the public interest to prevent the violation of a party's constitutional rights.") (internal quotation marks omitted); Vargas v. Jennings, 2020 WL 5074312, *4 (N.D. Cal. 2020) ("Just as the public has an interest in the orderly and efficient administration of this country's immigration laws[,] . . . the public has a strong interest in upholding procedural protections against unlawful detention.") (internal quotation marks and citation omitted); Valle del Sol Inc. v. Whiting, 732 F.3d 1006, 1029 (9th Cir. 2013) ("[I]t is clear that it would not be equitable or in the public's interest to allow the [government] . . . to violate the requirements of federal law[.]") (internal quotation marks omitted).

## CONCLUSION

Based on the foregoing, IT IS ORDERED THAT:

1.  Petitioner's PI Application **(Document No. 5)** is **granted** as set forth in this Order.

2.  Respondent shall release petitioner forthwith with all personal effects seized from petitioner, including all identification documents and immigration documentation.  Respondent shall not impose any release restrictions (e.g., electronic monitoring) on petitioner that were not in place prior to petitioner's arrest or detention in this case unless deemed necessary at a future pre-deprivation bond hearing.

3.  Respondent shall file with the court a Notice of Compliance within forty-eight (48) hours of releasing petitioner.

4.  Respondent shall not re-detain petitioner during the pendency of these proceedings without providing petitioner with, at minimum, individualized notice describing the change in circumstances necessitating her arrest and/or detention, and a pre-deprivation bond hearing before an immigration judge.  Petitioner shall not be detained unless respondent demonstrates

at the pre-deprivation hearing that petitioner is a flight risk or a danger to the community, and that there are no combination of conditions that will reasonably assure petitioner's appearance and/or the safety of any other person in the community.  If petitioner is again placed into detention in this District following proceedings in this case, respondent shall not transfer or remove petitioner from this District unless executing a final order of removal issued against petitioner.

5.   The parties shall meet and confer no later than **May 26, 2026**, to discuss what, if anything, remains to be done with respect to the Petition (Dkt. 1).

6.   Should the parties agree there is nothing further for the court to decide, they shall file a stipulation and proposed dismissal order no later than **May 29, 2026**.

7. If the parties disagree as to whether anything remains to be decided with respect to the Petition, then the parties shall file a joint status report.  The status report shall, at a minimum, include the parties' positions on the following:  (1) what issues remain for decision; (2) with respect to each issue, whether both parties intend to stand on briefing already filed, and if so, pointing the court to the specific docket entries and page numbers that provide the relevant briefing on each of the issues that remain; (3) if either party believes further briefing is necessary, proposing a schedule for such briefing and lodging a proposed briefing order; and (4) whether the parties agree to consent to the assigned Magistrate Judge for all purposes.[3]  **If mootness is one of the issues that remain for decision, the parties shall address the issue in the joint status report.**  The parties' joint status report shall be filed no later than **May 29, 2026**.  Failure to file a stipulation or a joint status report by the deadlines set forth above may be deemed as a concession that no further relief is available and that the action may be dismissed without prejudice.

Dated this 19th day of May, 2026.

/s/
Fernando M. Olguin
United States District Judge

---

[3]   If the parties consent to the assigned Magistrate Judge, they may file a Consent to Magistrate Judge (form CV-11D) in lieu of a joint status report by the above deadline.